IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BEAUMONT CHAPTER OF THE NAACP and JESSICA DAYE,<br><br>                Plaintiffs,<br><br>   v.<br><br>JEFFERSON COUNTY, TEXAS, JEFFERSON COUNTY COMMISSIONERS COURT, LAURIE LEISTER, in her official capacity as the JEFFERSON COUNTY CLERK, and MARY BETH BOWLING, in her official capacity as PRESIDING ELECTION JUDGE in JEFFERSON COUNTY,<br><br>                Defendants. | Civil Action No. |

**PLAINTIFFS' NOTICE OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND TO WAIVE LOCAL RULE CV-7(h)**

PLEASE TAKE NOTICE THAT Plaintiffs Beaumont Chapter of the NAACP ("Beaumont NAACP") and Jessica Daye move the Court for a temporary restraining order that grants them emergency relief (1) prohibiting Defendant Bowling from appearing or serving as the presiding election judge or, in any capacity as an election worker, at any voting center or polling location in Jefferson County on Election Day, November 8, 2022 (2) prohibiting all election judges, clerks, workers, volunteers or watchers at the John Paul Davis Community Center from (a) requesting or ordering any voters to publicly recite their addresses before allowing them to vote, (b) positioning themselves near voters marking ballots such that they can view voters' selections, (c) refusing to assist any voters in inserting or scanning their completed ballots into the appropriate voting machines, and (d) turning away voters who are duly eligible to vote for any reason, and (3) ordering Defendant Leister to send notice of the Court's Order to all affected election judges, clerks,

1

workers, volunteers, and watchers, and fully implement this Order, no later than 9:00 p.m. Central Time, November 7, 2022. Under Local Rule CV-7(g) Plaintiffs request an oral hearing on their motion as soon as possible in light of the irreparable harm that Plaintiffs will face if this Court does not grant the relief requested in Plaintiffs' temporary restraining order.

This motion is brought under Federal Rule of Civil Procedure 65 and is based on the accompanying emergency memorandum in support of the temporary restraining order and materials cited; the accompanying declarations; and such other materials and argument as may be presented in connection with the hearing on the motion.

Under Local Rule CV-7(h), meet and confer is required, but given the emergency nature of this action, Plaintiffs' counsel made a good faith effort to contact Defendants the morning of November 7, 2022 using their last known email addresses (including that of the County Clerk) prior to commencing this action to provide notice of the forthcoming application seeking immediate injunctive relief. Plaintiffs' counsel noted that Plaintiffs' will be sending filed versions of the documents upon commencing this action along with any details with respect to judicial assignment and the timing of any hearing on the request for a temporary restraining order.

Dated: November, 7, 2022

/s/ Jeff Homrig
Jeff Homrig
Nathaniel D. Bass
LATHAM & WATKINS LLP
301 Congress Avenue, Suite 900
Austin, Texas 78701
Tel: (737) 901-7300
Fax: (737) 910-7301
Email: jeff.homrig@lw.com
       nat.bass@lw.com

Sadik Huseny*
LATHAM & WATKINS LLP
505 Montgomery Street

San Francisco, California 94111
Tel: (415) 395-8116
Fax: (415) 395-8095
Email: sadik.huseny@lw.com

*Application for admission *pro hac vice* forthcoming

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
sfgold@lawyerscommittee.org

*Applications for admission *pro hac vice* forthcoming

*Attorneys for Plaintiffs Beaumont Chapter of the NAACP and Jessica Daye*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BEAUMONT CHAPTER OF THE NAACP and JESSICA DAYE, <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON COUNTY, TEXAS, JEFFERSON COUNTY COMMISSIONERS COURT, LAURIE LEISTER, in her official capacity as the JEFFERSON COUNTY CLERK, and MARY BETH BOWLING, in her official capacity as the PRESIDING JUDGE OF THE JOHN PAUL DAVIS COMMUNITY CENTER, <br><br> Defendants. | Civil Action No. 22 Civ. 488 <br><br> Oral Argument Requested |

**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

The right to vote free and unimpaired is a foundational principle of a democratic society—at the core of our civil and political rights. Constitutional, federal and Texas law are resolute that every voter must be free to vote as they wish: without being intimidated, spied upon, or harassed. *Reynolds v. Sims*, 377 U.S. 533, 562 (1964); 52 U.S. § 10101; Tex. Elec. Code § 62.0115(b)(2).

So it goes without saying that election managers and workers must strive to ensure that the voting experience is seamless for all Texans—whatever their background and wherever their voting location. Indeed, at the John Paul Davis Community Center—a voting location in Beaumont, Texas where approximately ~90% of the voters are Black—that has been the case for decades. The presiding judges and poll workers appointed to oversee the elections at this polling location—Republicans and Democrats alike—have exercised their duties over this sacred trust with care through these long years, creating a safe and enjoyable haven for all to vote.

1

But all that changed this year. The Jefferson County Clerk, Laurie Leister, a temporary appointment by the Jefferson County Commissioners Court, has appointed a presiding judge, Mary Beth Bowling, with zero election or voting experience to oversee all voting at the Community Center. And that presiding judge in turn has directed a remarkable shift in the way Black voters—and only Black voters—have been treated at the Community Center. As no less than six witnesses state in sworn declarations before this Court, voting at the Community Center *if you are Black* became a minefield of harassment and strife during the early voting period. Decl. of Jessica Daye ("Daye Decl.") ¶¶ 7–14; Decl. of Wilburean Benard ("Benard Decl.") ¶¶ 16–21; Decl. of Katherine Campbell ("Campbell Decl.") ¶¶ 11–16; Decl. of Joyce Roper ("Roper Decl.") ¶¶ 7–11; Decl. of Airon Reynolds, Jr. ("Reynolds Decl.") ¶ 11; Decl. of Wilmeretta Lowe ("Lowe Decl.") ¶¶ 8–9. White poll workers repeatedly and aggressively demanded that only Black voters recite their addresses, out loud and within the earshot of other voters, poll workers, and poll watchers. Daye Decl. ¶ 13; Campbell Decl. ¶ 10. They demanded such acquiescence even when the voter had already been checked in by another poll worker. Daye Decl. ¶ 13. They followed Black voters around the polling place, standing mere feet behind while the voter was attempting to cast their vote in privacy. Benard Decl. ¶ 21. And they then stood idle, neglecting their duties to assist Black voters who had marked their ballots did not know how to scan them. Roper Decl. ¶ 10. And throughout the whole process, *if* you were a Black voter: glares, hostility, suspicion, disdain.

Other workers and voters complained. And the officials laughed. Reynolds Decl. ¶ 17. As set forth in the declarations, the presiding judge continues to question Black voters and follow them around, despite being told it was inappropriate. Reynolds Decl. ¶ 15. When asked by the pastor of a local congregation, Mr. Airon Reynolds, to start treating Black and White voters equally, and not harass Black voters through such actions as making them recite their address out

loud as some sort of extra hurdle, Defendant Bowling refused. Reynolds Decl. ¶ 15. When the pastor complained to Ms. Leister, the County Clerk, Ms. Leister forced him to wait while she laughed and joked with her friend Defendant Bowling nearby—and then told him she would do nothing. Reynolds Decl. ¶¶ 17–18. And to cap the trifecta, when Pastor Reynolds complained to County Judge Jeff Branick, he was told they could do nothing to ensure the person they had appointed actually followed the law. Reynolds Decl. ¶ 28.

Plaintiffs come to this Court now because something must be done. Early voting has ended but Election Day is tomorrow—and Black voters are at serious risk of continued harassment and disenfranchisement. Plaintiffs bring this emergency motion because they have no other choice. And they ask for narrowly tailored relief: a temporary restraining order enjoining Defendants from committing such acts of intimidation and racial discrimination, so that all voters at Community Center may vote freely and without fear on Election Day.

## BACKGROUND

**A. Appointment, Duties, and Responsibilities of Election Judges and Election Workers**

For the November 8, 2022 General Election cycle, early voting began on October 24 and ended on November 4. Tex. Elec. Code § 85.001(a). Election Day is on November 8.

The conduct of elections in Texas is a partisan affair—run in close consultation with the two major political parties in the county. The county clerk is usually the early voting clerk for the county in a general election for state and county officers. *Id.* § 83.002(1). The county clerk is responsible for selecting the election officers who will serve at any early voting location, *id.* § 85.009(a). The county clerk must make these selections "in a manner that provides equal representation to the extent possible for each political party holding a primary election in the

county." *Id.* § 85.009(a).[1] The county clerk also has the power to remove, replace, or reassign election workers under certain circumstances. *Id.* § 32.034(f) ("[f]ollowing an oral warning to the election clerk and with the concurrence of the county chair of the same political party with which the election clerk is affiliated or aligned").

Therefore as the first order of business, the county clerk must appoint the presiding election judge and the alternate presiding judge of the early voting polling place. *Id.* § 85.009(b). The presiding election judge and the alternate presiding election judge serving at an early voting location must be aligned with the two different political parties. *Id.* The presiding judge must be from the political party that received the highest number of votes in the most recent gubernatorial election in the county, and the alternate presiding judge must be from the political party that received the second highest number of votes in the last gubernatorial election in the county. *Id.*; *see also Id.* § 32.002 (same is true for appointment of election judges on election day).

Once a presiding judge is appointed, the presiding judge is responsible for appointing at least two election clerks, *id.* § 32.033, one from each political party, *id.* § 32.034, "who will assist the judge in the conduct of an election," *id.* §§ 32.031. The presiding election judge "is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves." *Id.* § 32.071. The presiding judge sets the working hours and assigns the duties to be performed by all the election clerks serving under the judge. *Id.* § 32.072(a). To "facilitate and protect the integrity of the voting process" the presiding judge must "treat all election clerks serving at the polling place uniformly." *Id.* § 32.072(c).

---

[1] For Election Day, normally the county commissioners court, not the county clerk, is responsible for appointing the presiding judge and the alternate presiding judge. *Id.* § 32.002. "After the commissioners court appoints a presiding election judge and an alternate presiding election judge, the county clerk" must "provide the county chair of each political party a list of the individuals appointed by the commissioners court" in writing. *Id.* § 32.012(a)–(b).

4

**B. The Setup and Layout for Early Voting at the John Paul Davis Community Center.**

During early voting at the Community Center, there were typically six election workers at any given time, including the presiding judge, the alternate presiding judge, and four additional election clerks (two Democrat and two Republican). The presiding judge, Mary Beth Bowling and two election clerks are from the Republican Party. Campbell Decl. ¶ 7. The alternate presiding judge is from the Democratic Party. Benard Decl. ¶¶ 5–6, and two election clerks are from the Democratic Party. In addition to the election workers, there were typically four poll watchers, two from the Republican Party and two from the Democratic Party. Benard Decl. ¶ 7. The Democratic election workers including the alternate presiding judge are mostly, if not all, Black. *See id.* The Republican election workers including the presiding judge Defendant Bowling are White. *See id.*

The setup of the Community Center is as follows: There are two poll pads at the check-in table, and one Republican election clerk and one Democratic election clerk typically check voters in one at a time. Benard Decl. ¶¶ 7–8. The voting machines are set up three to four feet away from the check-in desk and after being checked in, the voter usually walks away from the check-in desk to the voting machines. Benard Decl. ¶ 13. On the opposite end there are ballot scanners, and election workers are near the scanners to help voters. Benard Decl. ¶ 14.



### C. Voting Atmosphere at the John Paul Davis Community Center During Early Voting

The Community Center is a central meeting place for the Black community in the North End of Beaumont. In past elections, the atmosphere at the Community Center during voting has represented that spirit, with election workers from both parties creating a welcoming atmosphere and assisting voters as they cast their ballots. Reynolds Decl. ¶¶ 9–10.

This election cycle, that spirit has been destroyed, replaced by hostility and intimidation in the polling place. Campbell Decl. ¶ 11; Benard Decl. ¶¶ 17–21; Reynolds Decl. ¶ 9; Lowe Decl. ¶¶ 8-9. Mary Beth Bowling is the presiding judge at the polling location appointed by the Republican Party. Benard Decl. ¶17. She will be serving as the presiding election judge on Election Day. Benard Decl. ¶ 17. Defendant Laura Leister is the County Clerk and is responsible for both appointing Defendant Bowling and failing to remove her from the polling location even after receiving complaints. Reynolds Decl. ¶ 18. The Jefferson County Commissioners' Court is the governing body of Jefferson County and plays a role in the appointment of poll workers.

First, Defendant Bowling loudly forced Black voters to repeat their home addresses, including after the address had already been verified by a poll worker during check in. This has made Black voters, including Plaintiff Daye feel intimidated. Daye Decl. ¶ 14. Second, Defendant Bowling followed and closely monitored the activity of Black voters in the polling place, going so far as to stand directly behind voters casting their ballots—no more than two feet away—such that they could see how voters were marking their ballots. This behavior occurred throughout early voting and was carried out by not only Defendant Bowling but the two Republican election clerks. Roper Decl. ¶ 8. White voters did not receive the same treatment. Roper Decl. ¶ 7.

This conduct created a hostile atmosphere of intimidation in a normally friendly polling place. Daye Decl. ¶ 13; Roper Decl. ¶ 9; Campbell Decl. ¶ 11: Cooper Decl. ¶ 4. Yet, when it was

6

reported to Defendant Leister, no intervention followed—Defendant Leister had a friendly conversation with Defendant Bowling, smiling and laughing, but she did nothing to stop the conduct, and nothing changed. Reynolds Decl. ¶ 17. So, too, did Mr. Reynolds' complaints to the Commissioners Court and County Judge Jeff Branick fall on deaf ears. Reynolds Decl. ¶ 28.

This intimidation has already resulted in voters leaving the Community Center without voting. Benard Decl. ¶ 18. If Defendants are not enjoined from continuing to engage in their intimidating and discriminatory behavior, it will prevent or frustrate the ability of Black voters in Beaumont to exercise their constitutional right to vote in the November 8 election, as they will continue to feel intimidated and unsafe voting at their traditional polling place and may need to travel further to a less convenient location to cast their ballot on Election Day, if they are able, after being prevented from doing so during early voting. Cooper Decl. ¶ 7; Daye Decl. ¶ 11.

## LEGAL STANDARD

A temporary restraining order is an "extraordinary remedy" and the court is within its full discretion in deciding whether to grant it. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982); *see also Powell v. Warden, FCI Beaumont Low*, 2022 WL 257445, at *1 (E.D. Tex. Jan. 5, 2022). Courts in the Fifth Circuit apply the same standard for a temporary restraining order as for a preliminary injunction. *Texas v. United States*, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021) (*citing Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). The elements that must be met are: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A movant "is not required to prove its case" at this stage. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985).

# ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A. Plaintiffs Can Establish Article III Standing.

Plaintiffs, both individual and organizational, have sufficiently alleged standing because they (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *El Paso Cty., Tex. v. Trump*, 982 F.3d 332, 337 (2020).

#### i. Plaintiffs Have Suffered an Injury in Fact.

Plaintiff Beaumont NAACP satisfies the Article III standing requirement under an associational theory of standing. Under an associational theory of standing, membership organizations may bring suit on behalf of their members where they are or are likely to be injured. *See e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) ("It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review."). The organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). These factors are easily satisfied here. Beaumont NAACP has 600 registered members most of whom identify as Black. Cooper Decl. ¶ 2. Many of these members have not yet voted and plan to vote at the Community Center on Election Day. Cooper Decl. ¶ 4. Members have heard that their fellow members have been intimidated at the Center, and hearing of this, are fearful of voting there on Election Day. Cooper Decl. ¶ 5. Voting is germane to the Beaumont NAACP's purpose. Cooper Decl. ¶ 8. Neither the claims or relief requested here requires the participation of individual members because the relief sought will affect voters generally, not particular individuals.

Individual Plaintiff Jessica Daye attempted to vote at the John Paul Davis Community Center on Wednesday, November 2 date. Daye Decl. ¶ 7. Plaintiff prefers to vote at the Community Center because it is close to her mother's house, where Plaintiff stays at night to take care of her mother, and because it is centrally located and well-known to the Black community in Beaumont. While standing in line to vote, Plaintiff witnessed a White poll worker demand that an elderly Black woman recite her address loudly for all onlookers to hear even though she had already been checked in to vote. Daye Decl. ¶ 8. This activity made Plaintiff deeply uncomfortable, and she feared she would be forced to loudly repeat her own private information if she stayed at the polling place. Daye Decl. ¶ 15. Plaintiff left the polling place unable to cast her ballot. Daye Decl. ¶ 9.

### ii.    The Injury Is Traceable to Defendants.

The injury is directly traceable to Defendants. First, Defendant Bowling's conduct intimidated voters and contributed to a hostile environment at the Community Center causing an ongoing injury that threatens to deny Plaintiff Daye and Beaumont NAACP members their right to the franchise. Further, Defendant Bowling will serve in this role on election day. Benard Decl. ¶ 17. And based on her past conduct, she is likely to repeat her intimidating behavior and further fail to fulfill her statutory duties, including ensuring that all voters can exercise their right to vote free from intimidation from poll watchers and other polling officials.

As Jefferson County Clerk, Defendant Leister is a county official with control over the election process. Defendant Leister further has the authority to "remove, replace, or reassign an election clerk who causes a disruption in a polling location or willfully disobeys the provisions of this code." *Id.* § 32.034(f). Defendant Leister has injured Plaintiffs by failing to act on numerous reports of intimidation at the Community Center during early voting, either by removing Defendant Bowling or taking other remedial action. Reynolds Decl. ¶ 17. Defendant Leister has overall control over the election process, including overseeing staffing at polling places and

ensuring that voters can cast their ballots free from intimidation and discrimination. Plaintiffs have been and will continue to be injured by Defendant Leister's failure to uphold her statutory duties.

Jefferson County has injured plaintiffs by failing to ensure a safe voting environment for the Black community in Beaumont. The Commissioner's Court was made aware of the problems unfolding at the Community Center and failed to act. Reynolds Decl. ¶ 28.

### iii. A Favorable Judicial Decision Will Redress the Injury.

Plaintiff Daye wishes to vote, but she has not yet done so in the 2022 elections because of the intimidation she felt when she attempted to vote at the Community Center. Daye Decl. ¶¶ 4, 9. Plaintiff Beaumont NAACP has members who wish to vote in the 2022 elections but are hesitant to do so because they fear intimidation and their neighborhood polling location. Cooper Decl. ¶ 5.

The Court can redress this injury by removing Defendant Bowling as a presiding judge for the full day on Election Day, November 8, at the Community Center. Benard Decl. ¶ 17. Defendant Leister and Defendant Jefferson County will retain the power they have over the conduct of the election process on election day, just as they did during early voting.

### B. Defendants Are in Violation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307.

Section 11(b) of the Voting Rights Act prohibits any person, whether acting under color of law or otherwise, from "intimidat[ing], threaten[ing], or coerc[ing], or attempt[ing] to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b). Section 11(b) does not require proof of racial motivation or intent. *Nat'l Coal. on Black Civic Participation v. Wohl* ("NCBCP II"), 512 F. Supp. 3d 500, 516 (S.D.N.Y. 2021); *United States v. Clark*, 249 F. Supp. 720, 728 (S.D. Ala. 1965); H.R. Rep. No. 89-439, at 30 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2437, 2462. Section 11(b) also applies equally to an "attempt" to intimidate voters—it is immaterial for the purposes of the law whether a voter was ultimately able to cast a ballot after

10

being subjected to intimidation. 52 U.S.C. § 10307(b). Section 11(b) "applies to private conduct and can be enforced through suit by a private individual." *NCBCP II*, 512 F. Supp. 3d at 509.

Because intimidation, may take many forms, *United States v. Beaty*, 288 F.2d 653, 656 (6th Cir. 1961), it does not have to take the form of violence or the threat of bodily harm. *Nat'l Coal. on Black Civic Participation v. Wohl* ("NCBCP" I), 498 F. Supp. 3d 457 (S.D.N.Y. 2020). Intimidating conduct encompasses not just violent but also nonviolent and subtle forms of conduct. Webster's Third New Int'l Dictionary 1183 (1966) (defining "intimidate" as to "make timid or fearful" or "inspire or affect with fear.")  This is precisely what Attorney General Nicholas Katzenbach told Congress Section 11(b) was designed to prevent: "subtle forms of pressure." Voting Rights Act of 1965: Hearing Before the H. Comm. on the Judiciary, 89th Cong. 12 (1965).

Thus liability under Section 11(b) has been found under a variety of circumstances: where the defendants carried out approximately 85,000 robocalls to predominantly Black voters spreading disinformation about voting by mail, *NCBCP I*, 498 F. Supp. 3d 457, 477 (S.D.N.Y. 2020); where defendants followed Native American voters within polling places, "ostentatiously making noises" behind them, discussing Native Americans who were prosecuted for illegally voting, following them out of the polling places, and recording their license plate numbers*, see* Decision and Order at 2 in *Daschle v. Thune,* No. 4:04 Civ. 04177 (D.S.D. Nov. 1, 2004).

And, just last week, a federal district court granted injunctive relief under Section 11(b) where the defendants were creating an intimidating environment for voters dropping their mail-ballots at drop boxes by taking photos of voters, collecting information on their license plates, and disseminating this information on social media. *Ariz. All. TRO Order, ECF No. 51, at 3 in For Retired Ams. v. Clean Elections USA*, No. 2:22-cv-01823-MTL (D. Ariz. Nov. 1, 2022).

In this case, Black voters have been subject to intimidating conduct.  They were followed

by Defendant Bowling and election workers, who hovered over them as they voted. They were singled out and subjected to aggressive demands and the indignity of having to recite their addresses out loud, even after election workers had verified those addresses, while White voters were not. Throughout the voting process, they were treated differently from White voters. This intimidation worked: many Black voters, including Plaintiff Daye, left without voting.

### C. Defendants Have Violated the Fourteenth and Fifteenth Amendments by Intentionally Discriminating and Targeting Black Voters On Account of Race.

Governmental action that targets a person based on the person's belonging to a "suspect class"—*i.e.*, race, religion, national origin, and alienage—violates the Fourteenth and Fifteenth Amendments. *Smith v. Allwright*, 321 U.S. 649, 664 (1944). The Fifteenth Amendment prohibits any state or political subdivision from denying a person his or her right to vote on account of race, color, or previous condition of servitude. U.S. Const. amend. XV. And the Fourteenth Amendment prohibits any governmental entity from denying a person within its jurisdiction equal protection of the laws. U.S. Const. amend. XIV, § 1. When a governmental entity discriminates based on race, strict scrutiny applies and the entity must demonstrate that the challenged classification serves a compelling state interest *and* that it is necessary to serve that interest. This is a high bar, because state action classifying citizens on the basis of race is by its "very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Shaw v. Reno*, 509 U.S. 630, 643 (1993) (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943).

Here the facts demonstrate that Defendant Bowling and other white election workers serving at the Community Center treated Black voters, and Black voters only, in a manner that was different from their treatment of white voters. Roper Decl. ¶ 7; Benard Decl. ¶¶ 18-20; Campbell Decl. ¶ 10. The facts also demonstrate that County Clerk Laurie Leister was made aware at least twice that poll workers were treating Black voters differently than White voters, including by

asking Black voters to recite their addresses. Campbell Decl. ¶ 13; Reynolds Decl. ¶ 16. By failing to stop this conduct, either by removing the offending poll workers or instructing them to halt their discriminatory behavior, Defendant Leister sanctioned a pattern and practice of racially discriminatory behavior. Defendant Leister cannot justify this discriminatory behavior as serving any compelling state interest or narrowly tailored to serving that interest.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF.

The abridgement or interference with the right to vote constitutes irreparable injury, particularly on the precipice of an election when no later remedy will be available. *See e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (stating that the right to vote is "a fundamental political right, because [it] is preservative of all rights"); *Veasey v. Abbott*, 870 F.3d 387, 394 (5th Cir. 2017) (because the challenged actions "affect—or threaten to affect—the plaintiffs' right to vote . . . [they] have shown they will suffer an irreparable injury"); *LULAC v. Abbott*, 493 F. Supp. 3d 548, 583 (W.D. Tex. 2020), vacated on other grounds ("[w]e have already determined that the fundamental right to vote is likely either threatened or in fact being impaired, on the eve of an election, and this conclusion mandates a finding of irreparable injury."). If the electorate suffers "intimidation, threatening conduct, or coercion such that their right to vote freely is abridged, or altogether extinguished, Plaintiff would be irreparably harmed." *Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *11 (D. Ariz. Nov. 4, 2016).

Election Day is tomorrow and it is the last opportunity to vote. Plaintiff Ms. Daye wants to vote at the Community Center but will not unless Defendant Bowling is removed and the election workers are directed to halt their discriminatory behavior toward Black voters. Daye Decl. ¶ 11. Many of Beaumont NAACP's members have yet to vote and plan to vote at the Community Center on Election Day. Cooper Decl. ¶ 4. They will be dissuaded from voting there for fear of Defendant

Bowling and election workers intimidating them, and may leave the polling place without voting. Cooper Decl. ¶ 5. The injury to Plaintiffs is thus irreparable. *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 247 (4th Cir. 2014) (noting "once the election occurs, there can be no do-over and no redress"). In the absence of interim injunctive relief, Defendant Bowling will continue to intimidate Black voters in Jefferson County and place undue burdens on their ability to vote, as occurred during every day of early voting. *Fish v. Kobach,* 840 F.3d 710, 752 (10th Cir. 2016) (finding "denial of the right to vote constitutes a strong showing of irreparable harm").

### III. THE INJURY OUTWEIGHS ANY POTENTIAL HARM TO DEFENDANTS.

Here, the injury to Plaintiffs—creation of an intimidating voting environment and targeting of voters because of race—far outweighs any injury to the Defendants. *Valles v. ACT, Inc.*, No. 4:22-CV-00568, 2022 WL 2789900, at *5 (E.D. Tex. July 15, 2022). For well over a century, the Supreme Court has viewed the right to vote as a "fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *see also Reynolds v. Sims*, 377 U.S. 533, 562 (1964). That overwhelmingly strong interest in protecting the unimpaired right to vote, free of intimidation, is vindicated by the preliminary injunctive relief requested here.

In contrast to Plaintiffs' fundamental interests in the relief sought, Defendants have absolutely no justification for intimidating voters or in engaging in racially discriminatory treatment of similarly situated White and Black voters who vote at the Community Center.

### IV. THE INJUNCTION IS IN THE PUBLIC INTEREST.

"Voter intimidation severely burdens the right to vote, and prevention of such intimidation is a compelling state interest." *Spencer v. Blackwell,* 347 F.Supp.2d 528, 535 (S.D. Ohio 2004) (citing *Burson v. Freeman,* 504 U.S. 191, 206 (1992)); *NCBCP II*, 498 F. Supp. 3d at 498 ("[I]ntimidation of individual voters inflicts harm upon the broader public's interest in selecting

elected officials through a free and fair process." And certainly no public interest can be served when county officials engage in racial discrimination in voting. *U.S. v. McLeod*, 385 F.2d 734, 746 n.24 (5th Cir. 1967) (quoting *U.S v. Manning*, 215 F. Supp 272, 295 (E.D. La. 1967) (There is a "'public interest in the constitutional right of all citizens to be free from racial discrimination in exercising voting rights.'") Defendants should not be permitted to impede and threaten the exercise of the most basic right in American democracy. "[O]ther rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964).

## V. RELIEF REQUESTED

Plaintiffs Beaumont NAACP and Daye request the Court grant their emergency motion for a temporary restraining order and grant the following relief:

(i) Prohibit Mary Beth Bowling from appearing, or serving as the presiding election judge or in any capacity as an election worker, at any voting center or polling location in Jefferson County on Election Day, November 8, 2022.

(ii) Prohibit all election judges, clerks, workers, volunteers or watchers at the John Paul Davis Community Center from:

  a. Requesting or ordering any voters to publicly recite their addresses before allowing them to vote;

  b. Positioning themselves near voters who are marking their ballots such that they can potentially view voters' selections;

  c. Refusing to assist any voters in inserting or scanning their completed ballot into the appropriate voting machine; or

  d. Turning away voters who are duly eligible to vote for any reason;

(iii) Order County Clerk Laura Leister to send notice of this Order to all affected election judges, clerks, workers, volunteers and watchers, and fully implement this Order, no later than 9:00pm Central Time, November 7, 2022.

## CONCLUSION

This Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunctive relief.

15

| | |
|---|---|
| Dated: November, 7, 2022 | /s/ Jeff Homrig <br> Jeff Homrig <br> Nathaniel D. Bass <br> LATHAM & WATKINS LLP <br> 301 Congress Avenue, Suite 900 <br> Austin, Texas 78701 <br> Tel: (737) 901-7300 <br> Fax: (737) 910-7301 <br> Email: jeff.homrig@lw.com <br>         nat.bass@lw.com <br><br> Sadik Huseny* <br> LATHAM & WATKINS LLP <br> 505 Montgomery Street <br> San Francisco, California 94111 <br> Tel: (415) 395-8116 <br> Fax: (415) 395-8095 <br> Email: sadik.huseny@lw.com <br><br> *Application for admission *pro hac vice* forthcoming <br><br> Jon Greenbaum* <br> Ezra D. Rosenberg* <br> Pooja Chaudhuri* <br> Sofia Fernandez Gold* <br> LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW <br> 1500 K Street, Suite 900 <br> Washington, DC 20005 <br> (202) 662-8600 <br> jgreenbaum@lawyerscommittee.org <br> erosenberg@lawyerscommittee.org <br> pchaudhuri@lawyerscommittee.org <br> sfgold@lawyerscommittee.org <br><br> *Applications for admission *pro hac vice* forthcoming <br><br> *Attorneys for Plaintiffs Beaumont Chapter of the NAACP and Jessica Daye* |