IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BEAUMONT BRANCH OF THE NAACP and JESSICA DAYE, <br><br> Plaintiffs, <br><br> vs. <br><br> JEFFERSON COUNTY, TEXAS and JEFFERSON COUNTY COMMISSIONERS COURT, ROXANNE ACOSTA-HELLBERG, in her official capacity as the JEFFERSON COUNTY CLERK, and MARY BETH BOWLING, in her official capacity as the PRESIDING JUDGE OF THE JOHN PAUL DAVIS COMMUNITY CENTER, <br><br> Defendants. | Civil Action No. 22 Civ 488 (MJT) |

**PLAINTIFFS' SUR-REPLY IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO 12(B)(1) AND 12(B)(6)**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................1

II.  ARGUMENT ..................................................................................................................2

      A.    Defendants' 12(b)(1) Motion Should Be Denied......................................................2

           1.    The Amended Complaint Establishes That Both Plaintiffs Have Standing ..................................................................................................2

                 a.    Plaintiff Jessica Daye Has Standing ................................................2

                 b.    Beaumont NAACP Has Standing .....................................................6

           2.    Plaintiffs' Complaints Are Not Moot And Are Capable Of Repetition, Yet Evading Review ..................................................................7

      B.    Defendants' 12(b)(6) Motion Should Be Denied......................................................7

           1.    Plaintiffs Have Alleged A Cognizable Cause Of Action Under The Voting Rights Act And Under 42 U.S.C. § 1983..........................................7

           2.    Defendants' Unclean Hands Argument Is Frivolous ...................................8

III.  CONCLUSION................................................................................................................8

## TABLE OF AUTHORITIES

### CASES

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021) (per curiam), *cert granted on other grounds*, 142 S. Ct. 1205 (2022)..................................................................................................6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..................................................................................................5

*Hancock Cnty. Bd. of Sup'rs v. Ruhr*,
  487 F. App'x 189 (5th Cir. 2012)...........................................................................6

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)................................................................................................2

*League of United Latin Am. Citizens – Richmond Regional Council 4614 v. Pub. Int. Legal Found.*,
  No. 18-cv-243, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ...............................6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................2

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  512 F. Supp. 3d 500 (S.D.N.Y. 2021) .................................................................3, 4

*Peyton v. Rowe*,
  391 U.S. 54 (1968)..................................................................................................4

*Physician Hosps. of Am. v. Sebelius*,
  691 F.3d 649 (5th Cir. 2012) ..................................................................................4

*R.J. Reynolds Tobacco Co. v. United States FDA*,
  No. 20-cv-176, 2022 WL 17489170 (E.D. Tex. Dec. 7, 2022) ..............................6

*Save Our Cmty. v. United States EPA*,
  971 F.2d 1155 (5th Cir. 1992) ................................................................................4

*Society of Separationists, Inc. v. Herman*,
  959 F.2d 1283 (5th Cir. 1992) ................................................................................5

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)..................................................................................................5

*United States v. Bruce*,
  353 F.2d 474 (5th Cir. 1965) ..................................................................................3

*United States v. Clark,*
    249 F. Supp. 720 (S.D. Ala. 1965) ...................................................................................6

**STATUTES**

42 U.S.C. § 1983 ..............................................................................................................................1

Tex. Elec. Code. Ann. § 63.011 ......................................................................................................3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 11 ................................................................................................2

H.R. Rep. No. 89-439 (1965) ..........................................................................................................3

I.    **INTRODUCTION**

Nothing in Defendants' Reply (Dkt. 44) should persuade the Court to grant Defendants' Motion to Dismiss (Dkt. 40). At nearly every turn, Defendants' arguments are contrary to law, fact, or both. Rather than analyzing whether the First Amended Complaint's (Dkt. 32) factual allegations, taken as true, plead a plausible cause of action, Defendants argue whether the alleged conduct makes them culpable—a premature inquiry at the motion to dismiss stage. To make matters worse, Defendants analyze those facts using rules created out of thin air. For example, Defendants allege that compliance with a state statute renders the Voting Rights Act and 42 U.S.C. § 1983 obsolete. Unsurprisingly, Defendants cite no law in support of this proposition, because there is no such law.

Where they do cite the law, they mischaracterize what it says. Texas law does not compel election officials to require voters to recite their addresses publicly; it requires them to verify voters' addresses, which can be done in various ways that are not intimidating, coercive, or discriminatory. And that is to say nothing of the swaths of Plaintiffs' Opposition (Dkt. 43) that Defendants ignore entirely. At bottom, the well-pled factual allegations in the First Amended Complaint show that the rights of Black voters in Jefferson County (including Jessica Daye and members of the Beaumont NAACP) have been infringed, that Defendants engaged in or condoned the intimidating, coercive, and discriminatory conduct, and that the conduct will continue in future elections. Plaintiffs have every right to ask this Court to prevent that harm from continuing in future elections. Plaintiffs thus respectfully request that the Court deny the Motion to Dismiss for the reasons set forth in their Opposition.[1]

---

[1] Defendants' have previously mischaracterized this Court's Temporary Restraining Order as "void *ab initio*" and refused to provide information about whether and how they complied with the TRO,

## II. ARGUMENT

### A. Defendants' 12(b)(1) Motion Should Be Denied

#### 1. The Amended Complaint Establishes That Both Plaintiffs Have Standing

For an individual plaintiff, standing has three elements: (i) an injury in fact that is (ii) caused by the Defendants' conduct and that would be (iii) redressed by a favorable decision. *See generally* Opp'n at 8 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 & n.1 (1992)). An association has standing when its members would otherwise have standing to sue in their own right provided that the interests the association seeks to protect are germane to the association's purpose and that neither the claim nor the relief requires participation of the individual members. *See id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). For the reasons set forth in Plaintiffs' Opposition, the First Amended Complaint satisfies both inquiries. Accordingly, the Court should deny Defendants' 12(b)(1) Motion.

##### a. Plaintiff Jessica Daye Has Standing

The First Amended Complaint sets forth plausible facts establishing Ms. Daye's injury. While waiting in line to cast her vote during early voting, Ms. Daye witnessed a poll worker accost an elderly Black voter, who had already completed the check-in process, and force her to recite her address aloud in front of the other poll workers, poll watchers, and voters. Opp'n at 7 (citing

---

leading Plaintiffs' to file a motion for order to show cause (Dkt. 42), which was withdrawn after Defendants finally confirmed compliance with the Order. Dkts. 46, 47. We note here that Defendants have advised the Court that the motion was withdrawn after they sent Plaintiffs a Federal Rule of Civil Procedure 11 motion, Dkt. 48, but failed to advise the Court that Plaintiffs responded to that threatened motion with a letter noting that filing a frivolous Rule 11 motion is itself a Rule 11 violation, and inviting Defendants to instead engage with Plaintiffs. Only then did Defendants contact Plaintiffs and share their representations about compliance. Moreover, Defendants' request to strike the motion for order to show cause is unsupported by authority and is inadvisable—that motion and subsequent briefing demonstrate the course of events that have transpired and serve as the only public record of Defendants' representations about TRO compliance.

Compl. ¶¶ 54, 55). Upset, and unwilling to subject herself to the same treatment, Ms. Daye left without voting. *Id.* That experience, and the effect it had on Ms. Daye's ability to exercise her right to vote, establishes her injury. *See id.* at 9-15 (citing, e.g., *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 506-07, 516-17 (S.D.N.Y. 2021) ("*NCBCP*")).

Defendants' primary argument in response is that "Defendants cannot cause injury when following the law by verifying voter addresses." Reply ¶ 6. That argument fails for two reasons. First, the poll worker at issue was ***not*** "following the law." As Defendants appear to recognize, the Texas Election Code requires poll workers to *verify* a voter's address; it does not require (or even condone) asking a voter to recite their address aloud, much less accosting a voter *after* she has already verified her address. *See id.* ¶ 3 (citing Tex. Elec. Code. Ann. § 63.011). In fact, former County Clerk Leister and Defendant Bowling testified that there are various ways—other than asking voters to state their addresses out loud—that poll workers can verify a voter's address. *See* Opp'n at 12 (citing Dkt. 32-1 (Nov. 7, 2022 TRO Hr'g Tr.) at 54:10-55:24; 57:17-58:8; 58:23-79:16, 80:9-17). Thus, Defendants' argument regarding Ms. Daye's injury fails by its own terms.

Second, even if the poll worker were "following the law," Defendants cite no precedent that "following the law" insulates them from liability, when the law is "followed" in an intimidating and/or discriminatory manner. In fact, Defendants' case law recognizes otherwise. *See United States v. Bruce*, 353 F.2d 474, 476 (5th Cir. 1965) ("[C]onduct that might be perfectly legal, if not colored by the bad intent of interfering with the right to vote, would become illegal upon proof of such illegal intent.")[2]. Defendants' "smoke and mirrors" accusation thus falls flat.

---

[2] The Voting Rights Act prohibits intimidating conduct, regardless of intent. *See, e.g.*, H.R. Rep. No. 89-439 (1965) ("The prohibited acts of intimidation need not be racially motivated; indeed, unlike 42 U.S.C. [§] 1971(b) (which requires proof of a 'purpose' to interfere with the right to vote) no subjective purpose or intent need be shown.").

3

Reply ¶ 5.  And while Defendants (again) attempt to establish a rigid set of "traditionally recognized categories of voter intimidation" by inserting a requirement of "a distinct and obvious threat of potential harm or actual harm" into the standing analysis, they do so without any legal support.  *Id.*  In fact, as the court recognized in *NCBCP*, "the interpretation of Section 11(b) … as prohibiting both violent and nonviolent forms of intimidation accords with courts' typical practice of reading remedial pieces of legislation broadly so as to give proper effect to the legislative intent."  512 F. Supp. 3d at 510 (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)).  Defendants' argument that Ms. Daye did not suffer "intimidation per se" is therefore contrary to fact and law.  Reply ¶ 6.  And Defendants do not even attempt to address how the law permits them to "follow" state law in a racially discriminatory manner, as alleged in the First Amended Complaint.

The proper inquiry at the motion to dismiss stage is not whether Plaintiffs have conclusively established intimidation or intentional discrimination; it is whether they have plausibly alleged facts establishing an injury.  *See Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).  For the reasons set forth in Plaintiffs' Opposition (at 9-12), the First Amended Complaint easily meets that "low threshold."  *See Save Our Cmty. v. United States EPA*, 971 F.2d 1155, 1161 (5th Cir. 1992).

As to the second prong of the standing inquiry, Defendants argue that the Commissioners' Court is "not the Great and Powerful Oz" and so has no ability to control the conduct of election workers in Jefferson County.  Reply ¶¶ 15-16.  But, of course, the Commissioners' Court is not the only named Defendant.  As Defendants concede, "[t]he Texas Legislature has given the county clerk the overall responsibility for holding elections."  *Id.* ¶ 16.  Accepting Defendants' argument at face value, Defendants' actions, including those of the Jefferson County Clerk who is

4

responsible for conducting elections, caused Ms. Daye's injury. Thus, Plaintiffs' First Amended Complaint satisfies the second prong of the standing inquiry. *See* Opp'n at 12-14.

As to the third prong, a favorable decision granting the narrow injunctive and declaratory relief requested in the First Amended Complaint would redress Ms. Daye's injury. *Id.* at 14-15. It is well-settled that, where a plaintiff alleges "a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998). That is precisely the case here, where Plaintiffs seek injunctive (and declaratory) relief in view of Defendants' continuing failure to respond to a series of complaints about intimidating and discriminatory conduct at polling locations in Jefferson County. *See* Compl. ¶¶ 4, 40-44, 69-70. Defendants' only argument in response is that "there is no effective relief to Plaintiffs because there is no real and immediate threat of injury in the future." Reply ¶ 12. But Jefferson County will hold elections in the future, including in May of this year, and Ms. Daye will attempt to vote in those future elections. Compl. ¶¶ 55, 75. Thus, Defendants' case law is readily distinguishable. In *Society of Separationists, Inc. v. Herman*, the plaintiff lacked standing because she could not show that *she* would be a prospective juror in front of the same judge in a future case. 959 F.2d 1283, 1285, 86 (5th Cir. 1992); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether **he** was likely to suffer future injury from the use of the chokeholds by police officers." (emphasis added)). Here, it is not merely speculative that Jefferson County will hold elections in the future; it will and, absent relief from this Court, Defendants' conduct before and after this case was filed give strong reason to believe that the intimidating and discriminatory conduct that plagued the 2022 General Elections will continue. Indeed, that Defendants refused to agree to

5

apply the narrow relief set forth in the Court's Temporary Restraining Order (Dkt. 14) to those future elections speaks volumes about the likelihood of future violations.

### b. Beaumont NAACP Has Standing

Because Ms. Daye has standing, the Court need not consider Beaumont NAACP's standing. *Brackeen v. Haaland*, 994 F.3d 249, 291 (5th Cir. 2021) (per curiam), *cert granted on other grounds*, 142 S. Ct. 1205 (2022); *R.J. Reynolds Tobacco Co. v. United States FDA*, No. 20-cv-176, 2022 WL 17489170, at *7-8 (E.D. Tex. Dec. 7, 2022). Nonetheless, Beaumont NAACP has standing in its own right.

Defendants' only argument regarding Beaumont NAACP's standing is that "Plaintiffs have failed to show any of [Beaumont NAACP's] members voted at this location and were intentionally intimidated to prevent them from voting." Reply ¶ 9. To start, whether the intimidating conduct was intentional or successful is irrelevant. *See* Opp'n at 20-21 (citing *League of United Latin Am. Citizens – Richmond Regional Council 4614 v. Pub. Int. Legal Found.*, No. 18-cv-243, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018); *United States v. Clark*, 249 F. Supp. 720, 728 (S.D. Ala. 1965)). Moreover, Defendants fail to address the law that states Plaintiffs are not required to identify a member who has suffered harm at the pleading stage. *See id.* at 16 (citing *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (unpublished)). And, as Defendants appear to recognize, Plaintiffs' First Amended Complaint alleges that Pastor Reynolds, a member of Beaumont NAACP, experienced intimidating conduct similar to that suffered by Ms. Daye. Reply ¶ 8. Thus, Defendants' argument that "an extremely small percentage" of Jefferson County residents are members of Beaumont NAACP is, ultimately, irrelevant. *Id.* ¶ 9. For the reasons set forth in Plaintiffs' Opposition, those well-pled facts establish Beaumont NAACP's standing. Opp'n at 15-17. And again, Defendants fail to address the allegations of intentional racial discrimination—as to which the Complaint adequately pleads supportive facts. Compl. ¶¶ 46-70.

6

Rather than confronting those facts (or engaging in any legal analysis whatsoever), Defendants argue that "[i]t would be logical that poll workers would feel threatened or intimidated by [Pastor Reynolds]." Reply ¶ 8. As with Defendants' "unclean hands" argument, this through-the-looking-glass assertion highlights Defendants' belief that Black voters are somehow the ones at fault here. That Defendants made this argument once was insulting enough. That they *doubled-down* on that position reinforces just how misguided their approach to handling complaints from Black voters truly is.

### 2. Plaintiffs' Complaints Are Not Moot And Are Capable Of Repetition, Yet Evading Review

Defendants do not respond substantively to Plaintiffs' assertion that their claims are not moot because the underlying conduct is capable of repetition, yet evading review. *See* Opp'n at 17-20. For that reason alone, the Court should deny Defendants' mootness motion. Instead, Defendants rehash their standing arguments under different cover. Reply ¶ 12 ("Therefore, there is no effective relief to Plaintiffs because there is no real and immediate threat of injury in the future."). Defendants, not Plaintiffs, are the ones making a "circular argument." *Id.* ¶ 11.

### B. Defendants' 12(b)(6) Motion Should Be Denied

#### 1. Plaintiffs Have Alleged A Cognizable Cause Of Action Under The Voting Rights Act And Under 42 U.S.C. § 1983

Defendants' only argument in support of their 12(b)(6) Motion is that "'ask[ing] a voter to confirm their address" is not against the law. *Id.* ¶ 13. Of course, that is not what happened here. Poll workers were not asking Black voters to "confirm their address." *Id.* They were asking Black voters, and Black voters only, to recite their addresses aloud before and *after* they had already confirmed their addresses. *See, e.g.*, Compl. ¶¶ 4, 54. Thus, even if complying with Texas state law were a defense to Plaintiffs' *federal* causes of action—it is not, as discussed in Plaintiffs' Opposition at 11-12—Defendants were not acting "in compliance with state law." Reply ¶ 13.

For the reasons set forth in Plaintiffs' Opposition, the Court should deny Defendants' 12(b)(6) Motion.  Opp'n at 20-26.

### 2. Defendants' Unclean Hands Argument Is Frivolous

Having blamed Black voters and poll workers for being discriminated against, Motion at 16-19, Defendants now argue that "[t]he point is that Daye, who is an elected precinct chair, did not bring her concerns to anyone."  Reply ¶ 17.  Defendants do not explain why that fact is relevant.  What is relevant is that Ms. Daye, a Black voter, experienced intimidating and discriminatory conduct that impacted her right to vote.  Defendants' argument regarding Plaintiffs' supposed "attempt to change Texas law" is a red herring.  *Id.* ¶ 18.  Defendants are not asking this Court to change the law; they are asking the Court to enforce the law.  Defendants have cited no law—and Plaintiffs are unaware of any—to support the baseless and insulting proposition that plaintiffs who are subjected to intimidating and racially discriminatory conduct that makes it more difficult for them to vote have "unclean hands" because they did not report the conduct to the perpetrators of the conduct before filing suit.  Especially here, where the conduct *was* reported to the Defendants on several occasions and nothing changed.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.  Additionally, Plaintiffs ask for oral argument, as Plaintiffs expect it would be helpful for the court in resolving the issues raised by Defendants.

Dated: January 18, 2023      */s/ Jeff Homrig*
                             Jeff Homrig (Bar No. 24129988)
                             Benjamin J. Behrendt (admitted *pro hac vice*)

Daniel S. Todd (admitted *pro hac vice*)
Madeleine Ball (admitted *pro hac vice*)
LATHAM & WATKINS LLP
301 Congress Avenue, Suite 900
Austin, TX 78701
Telephone: (737) 910-7300
Facsimile: (737) 910-7301
jeff.homrig@lw.com
benjamin.behrendt@lw.com
daniel.todd@lw.com
madeleine.ball@lw.com

Sadik Huseny (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
sadik.huseny@lw.com

Rachel Weiner Cohen (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
rachel.cohen@lw.com

Nathaniel D. Bass (admitted *pro hac vice*)
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
Telephone: (713) 546-5400
Facsimile: (713) 546-5401
nat.bass@lw.com

Jon Greenbaum
Ezra D. Rosenberg
Pooja Chaudhuri
Sofia Fernandez Gold[†]
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

        jgreenbaum@lawyerscommittee.org
        erosenberg@lawyerscommittee.org
        pchaudhuri@lawyerscommitee.org
        sfgold@lawyerscommittee.org
        †Admitted in New York only. Practice limited to matters before federal courts.

*Attorneys for Plaintiffs Beaumont Branch of the NAACP and Jessica Daye*

**CERTIFICATE OF SERVICE**

I certify that on January 18, 2023 all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF System according to the applicable Federal Rules of Civil Procedure.

                                               */s/ Jeff Homrig*
                                               Jeff Homrig (Bar No. 24129988)